**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| VOIT TECHNOLOGIES, LLC, | § § § | |
| *Plaintiff,* | § § | |
| vs. | § § | Case No: 4:16-CV-00695-ALM |
| DRUCKER LABS, LP, | § § § | |
| *Defendant.* | § § | |

**PLAINTIFF VOIT TECHNOLOGIES, LLC'S
OPENING CLAIM CONSTRUCTION BRIEF**

**TABLE OF CONTENTS**

I.   Introduction ............................................................................................................. 1
II.  Legal Standards for Claim Construction ................................................................ 1
III. Argument ................................................................................................................ 4
   a. **"information"** (claims 1-7, 13, 14, 17, 18, 20, and 21) ..................................... 4
   b. **"data"** (claims 1, 7-15, and 20-23) .................................................................... 5
   c. **"image data"** (claim 1, 7-11, and 13) ................................................................ 6
   d. **"first image format"** (claim 1, 10, and 11) ....................................................... 7
   e. **"batch"** (claim 1) ................................................................................................ 9
   f. **"batch upload"** (claim 1) .................................................................................. 10
   g. **"separately transferring the textual and image data in the first format"** (claim 1) .. 10
   h. **"storing"** (claims 1-3) ...................................................................................... 11
   i. **"storing the textual information separately from the image data"** (claim 1) ............ 12
   j. **"converting"** (claims 5, 10, and 11) ................................................................ 12
   k. **"wherein the second image format is identical to the second image format"** (claim 19)  13
IV.  Conclusion ............................................................................................................ 14

I.  **Introduction**

Pursuant to P.R. 4-5(a), the Court's Scheduling Order [DE 22] and the Court's June 19, 2017 Order Granting Joint Motion for Extension of Time Within Which to File Claim Construction Briefs [DE 43], Plaintiff VOIT Technologies, LLC ("VOIT" or "Plaintiff") submits this brief in support of its proposed patent claim constructions. This case involves U.S. Patent. No. 6,226,412 B1 (the "Patent" or "'412 Patent"), attached hereto as Exhibit A. VOIT alleges Defendant Drucker Labs, LP ("Drucker" or "Defendant") infringes independent claim 1 and dependent claims 3-6, 8-10, 12, 13, and 17-23 of the '412 Patent. The parties filed their Local Rule P-R 4-3 Joint Claim Construction and Prehearing Statement ("P-R 4-3 Report") [DE 33] on May 4, 2017. A claim construction hearing in this action is scheduled for August 1, 2017.

II. **Legal Standards for Claim Construction**

Claim construction is a matter of law. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). "The duty of the trial judge is to determine the meaning of the claims at issue, and to instruct the jury accordingly." *Exxon Chem. Patents, Inc. v. Lubrizoil Corp.*, 64 F.3d 1553, 1555 (Fed. Cir. 1995) (citations omitted).

Words of a claim "are generally given their ordinary and customary meaning." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). In some cases, "the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314.

In most cases, ascertaining the ordinary and customary meaning of the claims requires the court to consider "those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean." *Id.* at 1314 (quoting

1

*Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc*, 381 F.3d 1111, 1116 (Fed. Cir. 2004)). Such sources include the intrinsic record which consists of the claims, the specification, and prosecution history. *Id.* Additionally, "prior art cited in a patent or cited in the prosecution history of the patent constitutes intrinsic evidence." *Kumar v. Ovonic Battery Co.*, 351 F.3d 1364, 1368 (Fed. Cir. 2003). As stated in *Phillips*, "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." 415 F.3d at 1313. The specification "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Id.* at 1315 (quoting *Vitronics*, 90 F.3d at 1582). "The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Id.* at 1316 (quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)).

Although the specification is highly relevant in determining the meaning of a claim term, courts must be careful to avoid "the danger of reading limitations from the specification into the claim." *Id.* at 1323. In *Phillips*, the Federal Circuit acknowledged that the distinction between reading claims in light of the specification and importing limitations from the specification into the claim can be difficult and stated that "although the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments." *Id*. at 1323. To avoid importing limitations from the specification into the claims, it is important to remember that the purpose of the specification is to teach and enable those skilled in the art to make and use the invention and to provide a best mode for doing so, not to restrict the invention to specific examples provided in

the specification. *Id.* And, the "manner in which the patentee uses a term within the specification and claims usually will make the distinction apparent." *Id.*

Although intrinsic evidence is most informative in determining the claims' customary and ordinary meaning, a court may use extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Id.* at 1317 (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995) (en banc)). However, the Federal Circuit has warned against relying on dictionaries, especially non-technical dictionaries, to define the scope of claim terms. *Anderson v. Int'l Eng'g & Mfg., Inc.*, 160 F.3d 1345, 1348-49 (Fed. Cir. 1998). Indeed, if a dictionary definition is inconsistent with the specification, the meaning in the specification must prevail. *In re Johnston*, 435 F.3d 1381, 1384 (Fed. Cir. 2006). Further, even "[t]echnical dictionaries and treatises may help the Court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but such sources may also provide overly broad definitions or may not be indicative of how terms are used in the patent." *DSS Tech. Mgmt. v. Intel Corp.*, No. 6:15-cv-130, 2016 U.S. Dist. LEXIS 32157, at *3-4 (E.D. Tex. Mar. 14, 2016) (citing *Phillips*, 415 F.3d at 1318). "Generally, extrinsic evidence is 'less reliable than the patent and its prosecution history in determining how to read claim terms.'" *Id*. (quoting *Phillips*, 415 F.3d at 1318).

Most importantly the "claim language guides the Court's construction of claim terms." *Id*. (citing *Phillips*, 415 F.3d at 1314). "[T]he context in which a term is used in the asserted claim can be highly instructive." *Id*. "Other claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of a claim term." *Id*. "Because claim terms are normally used consistently throughout the patent, the usage of a term

3

in one claim can often illuminate the meaning of the same term in other claims." *Phillips*, 415 F.3d at 1314. Significantly, "[d]ifferences among claims can also be a useful guide in understanding the meaning of particular claim terms." *Id*. "For example, the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Id*.

## III. Argument

Defendant's proposed constructions are transparent attempts to severely restrict the scope of the claims by limiting the '412 Patent's terms beyond their application. Such constructions, which do not reflect the ordinary and customary meaning of the claim terms and are not justified by the '412 Patent or its prosecution history, should be rejected. Plaintiff's constructions, on the other hand, do not import extraneous limitations and are consistent with the claims' plain language as well as being supported by the specification. Plaintiff's constructions reflect the balance of interpreting claims in light of the specification, while avoiding importing limitations from the specification.

### a. "information" (claims 1-7, 13, 14, 17, 18, 20, and 21)

| VOIT's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| No construction needed.<br><br>However, if the Court deems construction necessary, then "data that can be stored in or retrieved from a computer, or knowledge communicated or received concerning a particular fact or circumstance." | The result of applying data processing to data. |

No construction for this term is necessary because its plain and ordinary meaning is clear. In construing a disputed claim term, the term is given its "ordinary and customary meaning," which "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1313. This "provides an objective baseline from

4

which to begin claim interpretation," because "patents are addressed to and intended to be read by others of skill in the pertinent art." *Id*. Defendant cannot identify any lexicography, disclaimer, or disavowal for "information." Consequently, the plain and ordinary meaning of the term should control. However, if the Court finds construction necessary, then it should reject Defendant's proposed construction since it is improperly overly narrow, and instead define the term as "data that can be stored or retrieved from a computer, or knowledge communicated or received concerning a particular fact or circumstance." *See* Webster's New World College Dictionary 693 (3d ed. 1996), attached hereto as Exhibit B ("3. knowledge acquired in any manner; facts; data; learning … 6. any data that can be stored in and retrieved from a computer"); CDE - Computer Desktop Encyclopedia, "information" (v. 30.2b, 2d quarter 2017), *available at* http://lookup.computerlanguage.com/host_app/search?cid=C999999&term=data&lookup.x=0&lookup.y=0 (last accessed Jun. 20, 2017), attached hereto as Exhibit C ("information" and "data" cannot be precisely defined and both are used interchangeably.").

    **b.** **"data"** (claims 1, 7-15, and 20-23)

| VOIT's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| No construction needed.<br><br>However, if the Court deems construction necessary, then "any form of information or knowledge concerning a particular fact or circumstance." | Digital recordation of alphabet, numbers, images that can be input into a computer for storage, processing, and/or transmittal. |

No construction for this term is necessary because its plain and ordinary meaning is clear. Defendant cannot identify any lexicography, disclaimer, or disavowal for "data." Consequently, the plain and ordinary meaning of the term should control. However, if the

Court finds construction necessary, then it should reject Defendant's proposed construction since it is improperly overly narrow.

To explain, Defendant's proposed construction improperly limits "data" to a specific tangible format, namely a "digital recordation of alphabet, numbers, [or] images." However, nothing in the '412 Patent or its prosecution history explicitly provides for or implies such restrictions. Indeed, the '412 Patent implies a much broader construction of the term. *See* '412 Patent 12:4-6 ("7. The method of claim 1, wherein the step of entering the information includes receiving the image *data in printed form*.") (emphasis added).

"[I]n common usage, the terms 'data' and 'information' are used synonymously." CDE - Computer Desktop Encyclopedia, "data" (v. 30.2b, 2d quarter 2017), *available at* http://lookup.computerlanguage.com/host_app/search?cid=C999999&term=data&lookup.x=0&lookup.y=0 (last accessed Jun. 20, 2017), attached hereto as Exhibit D. While, data "can take the form of characters such as letters, numbers, punctuation marks, mathematical operators, and control characters," it need not be so limited. Ray Horak, Webster's New World Telecom Dictionary 125 (2008), attached hereto as Exhibit E. "Data also can take the form of photographic display elements, such as pixels." *Id.* Accordingly, the Court should reject Defendant's overly narrow proposed construction, and instead adopt VOIT's proposed construction, if any, since it does not unnecessarily restrict the plain and ordinary meaning of the term "data."

    **c.** **"image data"** (claim 1, 7-11, and 13)

| VOIT's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| No construction needed. | Digitized image. |
| However, if the court deems construction necessary, then: "image related data and/or information, or image related data and/or | *See also* definitions for "image" (P-R 4-3 Report 1) and "data" (*supra* § III(b)). |

| | |
|---|---|
| information file." | |

No construction for the term "image data" is necessary because its plain and ordinary meaning is clear. Indeed, it merely combines the terms "image," which the parties have agreed to construe as "an imitation or representation of a physical likeness," P-R 4-3 Report 1, and "data," which is discussed above, *supra* § III(b). As such, the term "image data" need not be separately defined. Indeed, Defendant agreed to construe the similarly compound term "image information" as "image related information." P-R 4-3 Report 1. Defendant cannot identify any lexicography, disclaimer, or disavowal that explicitly or implicitly suggests that the phrase "image data" should be construed in any manner other than the plain and ordinary combination of its parts.

Defendant's proposed construction of "image data" of a "digitized image" is improperly restrictive. The plain language of the '412 Patent explicitly calls for a much broader construction of the term. *See* '412 Patent 12:4-6 ("7. The method of claim 1, wherein the step of entering the information includes receiving the *image data in printed form*.") (emphasis added). Accordingly, Defendant's proposed construction must be rejected. The plain and ordinary meaning of the term should control. However, if the Court finds construction necessary, then it should adopt Plaintiff's proposed construction of an "image related data and/or information, and/or image related data and/or information file."

### d. "first image format" (claim 1, 10, and 11)

| VOIT's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| No construction needed.<br><br>However, if the court deems construction necessary, then: "one compressed image format." | One compressed digitized image format.<br><br>*See also* definitions for "compressed," "image" (P-R 4-3 Report 1) and "format" (*id.*). |

7

The term "first image format" need not be separately construed because its plain and ordinary meaning is clear. It merely combines the terms "image" and "format," which the parties have agreed to respectively construe as "an imitation or representation of a physical likeness" and "a type of encoding, encrypting, or arrangement of data for computer usage," P-R 4-3 Report 1, with the prefix "first."

To the extent necessary, Plaintiff agrees to Defendant's construction of "first" as "one." *See* American Heritage Dictionary, "one" (5th ed. 2017), *available at* https://ahdictionary.com/word/search.html?q=one (last accessed Jun. 20, 2017), attached hereto as Exhibit F ("1. Being a single entity, unit, object …. 4. Being a single member or element of a group, category, or kind …. 5. Being a single member or element of a group, category, or kind …."). Although redundant in the context of the '412 Patent's plain language, to the extent necessary, Plaintiff even agrees to Defendant's construction of the term as "one *compressed* image format." *See* '412 Patent 11:16-17 ("c. data-compressing the image data into a first image format."). However, Defendant improperly attempts to limit the construction of the term by defining it as "one compressed *digitized* image format."

Defendant cannot identify any lexicography, disclaimer, or disavowal that explicitly or implicitly suggests that the phrase should be construed in any manner other than the plain and ordinary combination of its parts or that the image format need be "digitized." Accordingly, Defendant's proposed construction must be rejected. As such, Defendant's proposed construction must be rejected. If the Court finds construction necessary, then it should adopt Plaintiff's proposed construction of "one compressed image format."

8

e. **"batch"** (claim 1)

| VOIT's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| No construction needed.<br><br>However, if the court deems construction necessary, then "a group of jobs, data, programs or records." | A group of jobs, data, programs or records treated as a unit for computer processing without intervening human intervention. |

No construction for this term is necessary because its plain and ordinary meaning is clear. Defendant cannot identify any lexicography, disclaimer, or disavowal for "batch." Consequently, the plain and ordinary meaning of the term should control. A "batch" is widely understood to be "[a] group, or collection, of items." CDE - Computer Desktop Encyclopedia, "batch" (v. 30.2b, 2d quarter 2017), *available at* http://lookup.computerlanguage.com/host_app/search?cid=C999999&term=batch&lookup=Go (last accessed Jun. 20, 2017), attached hereto as Exhibit G; *see also* American Heritage Dictionary, "batch" (5th ed. 2017), *available at* https://ahdictionary.com/word/search.html?q=batch (last accessed Jun. 20, 2017), attached hereto as Exhibit H ("4. *Computers* A set of data or jobs to be processed in a single program run").

If the Court finds construction necessary, then it should reject Defendant's proposed construction since it is incorrectly restricts the group of jobs, data, programs, or records to "being treated as a unit for computer processing without human intervening human intervention." In fact, the '412 Patent expressly contemplates human intervention in the processing of a batch transaction. '412 Patent 9:24-27 ("if desired, the *operator may choose* to transmit the record to the central database computer, as a single transaction or with additional records included in a batch transaction.") (emphasis added). As such, Defendant's proposed construction must be rejected, and, if necessary, the Court should adopt Plaintiff's proposed construction of "a group of jobs, data, programs or records."

      **f. "batch upload"** (claim 1)

| VOIT's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| No construction needed.<br><br>However, if the court deems construction necessary, then: "batch transaction." | Transfer ring programs or data over a digital communications link from a smaller or peripheral "client" system to a larger or central "host" one as a group of jobs, data, programs or records treated as a unit for computer processing without intervening human intervention.<br><br>*See also* definitions for "upload" (P-R 4-3 Report 1) and "batch" (*supra* § III(e)). |

      No construction for the term "batch upload" is necessary because it is simply a compound of two terms that are independently construed or clearly understood. *See* "batch," *supra* § III(e); "upload," P-R 4-3 Report 1. As set forth in Sections III(c) and (d) above, the compound term need not be separately construed apart from the sum of its parts.

      Defendant's unnecessarily complex and limited construction should be rejected, especially in light of its agreement to construe the term "upload" as "transfer[ing] programs or data." P-R 4-3 Report 1. Defendant cannot identify any lexicography, disclaimer, or disavowal that explicitly or implicitly suggests that the phrase "batch upload" should be construed in any manner other than the plain and ordinary combination of its parts.

      **g. "separately transferring the textual and image data in the first format"** (claim 1)

| VOIT's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| No construction needed.<br><br>However, if the court deems construction necessary, then: "transferring the textual data apart from the image data in the first format." | Transferring the textual data apart from the image data in the first format.<br><br>*See also* definitions for "separately" (P-R 4-3 Report 1), "transferring" (*id.*), "textual" (*id.*), and "image data in the first format" (*id.* at 2). |

      No construction for this term is necessary because its plain and ordinary meaning is clear. As set forth in Sections III(c), (d) & (f) above, this term is a phrase composed of independently

defined or clearly understood terms and need not be construed independently from the sum of its parts. *See* "separately" (P-R 4-3 Report 1), "transferring" (*id.*), "textual" (*id.*), and "image data in the first format" (*id.* at 2). However, if the Court finds construction necessary, Plaintiff does not oppose the proposed construction of "transferring the textual data apart from the image data in the first format."

      h. **"storing"** (claims 1-3)

| VOIT's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| No construction needed.  However, if the court deems construction necessary, then "to put or retain." | To put or retain (data) in a memory unit. |

Like all of these terms, construction of "storing" is unnecessary because its plain and ordinary meaning is clear. The '412 Patent contains no lexicography, disclaimer, or disavowal for "storing" to support a construction limiting its plain meaning.

Defendant's proposed construction incorrectly limits the term "storing" to its application in connection with computer hardware. Moreover, it is unjustifiably restrictive in confining the data to a single "memory unit."

While the computer hardware is a component of how "storing" is used in the '412 Patent, it reference may also extends to a software method step. For example, the specification discloses that "the system may be used in conjunction with marketing activities … wherein text and image information files are stored in and retrieved from a relational database and an image database respectively…." '412 Patent 3:34-41. In other words, data or information in a spreadsheet may be stored in a computer's memory devise, it can also said to be stored in the database at row X, column Y.

11

Accordingly, Defendant's proposed construction must be rejected as inappropriately narrow. If necessary, the Court should adopt Plaintiff's proposed construction of "to put or retain."

### i. "storing the textual information separately from the image data" (claim 1)

| VOIT's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| No construction needed.<br><br>However, if the court deems construction necessary, then: "storing the textual information apart from the image data." | Retaining image data in a separate memory unit from the textual information.<br>See *also* definitions for "image" (P-R 4-3 Report 1), "data" (*supra* § III(b)), "image data" (*supra* § III(c)), "textual" (P-R 4-3 Report 1), "information" (*supra* § III(a)), "separately" (P-R 4-3 Report 1), and "storing" (*supra* § III(h)). |

No construction for this term is necessary because its plain and ordinary meaning is clear. As set forth in Sections III(c), (d), (f), and (g) above, this term is a phrase composed of independently defined or clearly understood terms and need not be construed independently from the sum of its parts. *See* "storing" (*supra* § III(h)); "textual" (P-R 4-3 Report 1); "information" (*supra* § III(a)); "separately" (P-R 4-3 Report 1); "image" (*id.*); "data" (*supra* § III(b)); "image data" (*supra* § III(c)). Defendant's proposed construction must be rejected because it incorporates the same flaws found in its proposed construction for the term "storing." *See supra* § III(h). If the Court finds construction of this term necessary, it should adopt Plaintiff's proposed construction of "storing the textual information apart from the image data."

### j. "converting" (claims 5, 10, and 11)

| VOIT's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| No construction needed.<br><br>However, if the court deems construction necessary, then: "changing, transforming, or modifying." | To transform data from one computer coding language to another. |

Like previous terms, the plain and ordinary meaning of "converting" is not modified by lexicography, disclaimer, or disavowal, making construction unnecessary. *See* Dictionary.com Unabridged, "convert" *available at* http://www.dictionary.com/browse/convert (last accessed Jun. 20, 2017), attached hereto as Exhibit I ("1. To change (something) into a different form or properties; transmute; transform."). To the extent that construction is necessary, Defendant's proposal must be rejected.

Defendant's proposed construction goes too far in limiting the term to the transformation of "data from one computer coding language to another," well beyond its various application in connection with the '412 Patent. While "converting" can indeed refer to the change in "computer coding language," the '412 Patent contemplates "changing, transforming, or modifying" many other elements, such as the level of data or information's encryption or location and image size. *See* '412 Patent 1:59-64, 5:04-21, 5:32-45, 7:5-7. It also discloses the conversion of information output, such as "converting the associated text information into voice information…." *Id.* 10:41-42. Additionally, while image files may be converted to different formats designations (i.e. Received, Transmitted, and Local), the file itself may not necessarily undergo any change. *See id.* 7:16-19, 7:32-33, 7:66-8:02. If the Court finds construction of this term necessary, it should adopt Plaintiff's proposed construction of "changing, transforming, or modifying."

### k. "wherein the second image format is identical to the second image format" (claim 19)

| VOIT's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "Wherein the second image format is identical to the first image format." | No construction needed. |

Dependent claim 19 erroneously reads, "[t]he method of claim 1, wherein the second image format is identical to the second image format." VOIT respectfully request this Court

13

correct claim 19 and construe it to read, "[t]he method of claim 1 wherein the second image format is identical to the *first* image format," since this error is evident on the face of the '412 Patent and the requested correction is supported by the specification. *See* '412 Patent 7:66-8:22 ("in yet another embodiment, it should be understood that the image files may be stored in one particular format and remain in the same format as at the time of receipt and storage.").

## IV.   Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court construe the claims or apply the plain and ordinary meaning of the disputed claim terms as proposed by Plaintiff.

Dated: June 20, 2017.

Respectfully submitted,

*/s/ David Tamaroff*
David F. Tamaroff, Esq. (Fla. Bar: 92084)
Email: dt@lipscombpartners.com

**LIPSCOMB & PARTNERS, PLLC**
25 S.E. 2nd Avenue. 8th Floor
Miami, Florida 33131
Telephone: (786) 431-2228
Facsimile: (786) 431-2229
*ATTORNEYS FOR PLAINTIFF*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was served upon all counsel of record via CM/ECF on June 20, 2017.

*/s/ David Tamaroff*
David F. Tamaroff, Esq.
